IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

RICHARD E. PETTICE                                                                        PLAINTIFF

V.                                    CIVIL NO. 3:14-cv-03076-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Richard E. Pettice, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I. Procedural Background

Plaintiff filed his applications for DIB and SSI on April 19, 2012, alleging disability since October 1, 2010[1], due to breathing problems, leg problems, walking problems, hernia, limbs going numb, severe depression, and severe chest pains. (T. 150-156, 157-165, 184) His claims were denied initially on August 17, 2012, and upon reconsideration on February 5, 2013. (T. 89-91, 92-95, 100-101, 102-104) An administrative hearing was requested on February 11, 2013. (T. 99) The hearing was held on March 20, 2013, in Harrison, Arkansas, before the Hon. Harold D. Davis,

---

[1] The alleged date of onset was amended to October 3, 2010 during the administrative hearing. (T. 52)

Administrative Law Judge ("ALJ"). (T. 44) Plaintiff appeared and was represented by counsel. (T. 44, 46) Also present at the hearing was Jim Spraggins, a vocational expert ("VE"). (T. 46)

By a written Decision dated May 10, 2013, the ALJ found Plaintiff had the following severe impairments: hypertension; non-insulin dependent diabetes mellitus; chronic obstructive pulmonary disease; obesity; and, depression. (T. 25-26) The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (T. 26-27) After careful consideration of the entire record, and partially discrediting Plaintiff's subjective complaints, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except Plaintiff must avoid concentrated exposure to dust, fumes, and smoke, avoid exposure to heights or dangerous machinery, and he would need to work at jobs which involve simple tasks and simple instructions. (T. 27-31)

With the help of the VE, the ALJ determined Plaintiff could not perform his past relevant work ("PRW"), but he could perform the requirements of the representative occupations of small production (DOT 689.585-018), with 4,000 such jobs in Arkansas and 500,000 jobs in the national economy; small product assembler (DOT 706.684-030), with 4,000 such jobs in Arkansas and 203,000 jobs in the national economy; and, small product inspector (DOT 669.687-014), with 1,100 such jobs in Arkansas and 68,000 jobs in the national economy. (T. 31-32) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 32)

On June 14, 2013, Plaintiff requested a review of the hearing decision by the Appeals Council. (T. 16) On August 30, 2013, Plaintiff's counsel supplied the Appeals Council with

additional medical evidence consisting of a Diabetes Mellitus Assessment Questionnaire and Physical Residual Functional Capacity Questionnaire, both by James Hawk, M.D., dated August 27, 2013[2]. (T. 6-14) The Appeals Council, acknowledging consideration of the additional evidence, denied Plaintiff's request for review on June 30, 2014. (T. 1-4) Plaintiff filed this action on August 6, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 6) Both parties have filed appeal briefs (Docs. 12, 13), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

---

[2] Dr. Hawk is a one-time consulting physician who met with Plaintiff for 15 minutes and completed a fill-in-the-blank assessment form. A conclusory checkbox form has little evidentiary value. *See Anderson v. Astrue*, 696 F.3d 790 (8th Cir. 2012); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010); and, *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). It is also proper to discount Plaintiff's encounter with a medical professional that is linked primarily to obtain benefits, rather than to obtain medical treatment.  *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled, as defined in the Social Security Act, from the amended date of onset on October 3, 2010 through the date of the ALJ's Decision on May 10, 2013. Plaintiff raises three points on appeal, which can be summarized as follows: (1) the ALJ erred in his RFC determination; (2) the ALJ erred in finding that Plaintiff's back pain was not severe; and, (3) a general argument that the ALJ's decision denying benefits is not supported by substantial evidence. (Doc. 12, pp. 8-13) Each issue is addressed in turn.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  No Error in RFC Determination

The ALJ determined Plaintiff has the RFC to perform sedentary work, except Plaintiff must avoid concentrated exposure to dust, fumes, and smoke, avoid exposure to heights or dangerous machinery, and he would need to work at jobs which involve only simple tasks and simple instructions. (T. 27-31) The Court finds substantial evidence supports the ALJ's RFC determination.

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and

others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

**1. Medical Opinions**

Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence because it is inconsistent with the medical opinions of a treating physician, Joseph Klag, M.D., and two consultative examiners, Keith Cunningham, M.D. and Samuel Hester, Ph.D. (Doc. 12, pp. 8-11)

As the ALJ noted, there is a dearth of medical evidence to support Plaintiff's allegations of disabling impairments as of his amended onset date of October 3, 2010. (T. 28) In fact, there are no treatment records in 2010, and none until Plaintiff's chiropractic records beginning in October 2011. (T. 383-426) Following that period of chiropractic care, there are no treatment records until Plaintiff's visit to Phoenix Baptist Hospital on May 19, 2012. (T. 273-290) Thereafter, Plaintiff only sought treatment twice: on July 23, 2012 when he went to Phoenix Baptist Hospital for a laceration to his forehead (T. 338-339), and on September 26, 2012 when he was seen at Banner Thunderbird Medical Clinic for shortness of breath and chest pains (T. 324). In general, the failure to obtain treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain,

Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"); *Novotny v. Chater*, 72 F.3d 669, 670 (8th Cir. 1995) (Plaintiff had not sought any regular or sustained medical treatment).

Plaintiff says his failure to seek medical treatment, and to take prescribed medications, is due to financial hardship. (T. 58, 63, 65) The ALJ noted, however, that no evidence of record exists to show Plaintiff has been denied treatment due to a lack of funds or that he sought free medical care or prescription assistance. (T. 28) This is consistent with Eighth Circuit precedent. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir. 1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations") (internal quotations omitted); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (if the record does not contain evidence showing that Plaintiff was denied treatment for financial reasons, the court should reject Plaintiff's claim of inability to afford treatment). Moreover, the record shows Plaintiff has been able to afford to buy cigarettes, as he continues to smoke a pack of cigarettes per day. (T. 63). *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (despite the claim that he could not afford medication, the fact that claimant chose to smoke rather than pay for medications was inconsistent with disabling pain).

Plaintiff acknowledged he has been advised to quit smoking. (T. 56) Dr. Klag, upon whom Plaintiff now relies, bluntly reported, "... clearly this gentleman needs ... [t]o take better care of himself and pay attention to risk factor modification ... [h]e will need help to stop smoking and

drinking³, but I did discuss with him in great detail the importance of such lifestyle modification ... [h]e will need weight loss as well." (T. 280) Despite this wise guidance, Plaintiff continues to smoke a pack of cigarettes per day, and while he stated "I'm trying to quit ... I can't seem to do it," he also admitted he has never used patches or other smoking cessation aids in an attempt to quit. (T. 57, 63) Plaintiff's continued smoking, despite medical recommendation to quit, was noted by the ALJ as being "inconsistent with allegations of severe and disabling symptoms." (T. 28) *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997) (impairments that are controllable or amenable to treatment, including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including the cessation of smoking, without good reason is grounds for denying an application for benefits).

The ALJ commented that the evidence of record shows Plaintiff did not actively seek medical treatment for his alleged impairments; his injuries and conditions were treated conservatively, including medications, when he did seek treatment; he failed to comply with his physicians' recommendations; and, none of his treating physicians placed restrictions on his activities that would preclude all work activity. (T. 28) The records of Plaintiff's treatment at Phoenix Baptist Hospital from May 19-20, 2012 certainly support these conclusions. (T. 273-290) Upon his discharge from the hospital, Plaintiff was diagnosed with COPD exacerbation; chest pain, felt to be non-cardiac in nature; alcohol abuse and intoxication; hyperglycemia; fatty liver; elevated liver function tests (perhaps related to alcohol abuse); tobacco abuse; and, obstructive sleep apnea. (T. 273) He was sent home in stable condition with no restrictions of his activities other than "as tolerated." Medications

---

³ Plaintiff advised Dr. Klag on May 19, 2012 that he smokes "more than a pack of cigarettes a day" and "drinks at least a pint of liquor a day" (T. 279), but he denied at hearing drinking daily and testified he only drinks alcohol occasionally (T. 57).

prescribed included Albuterol metered-dose inhaler for shortness of breath, Tylenol #3 for pain, Z-Pak, and a Prednisone taper. He was instructed to follow up with his primary care physician and cardiology within one to two weeks. (T. 274) He did not follow up as directed, further suggesting that his symptoms were not as serious as alleged.

On July 11, 2012, Dr. Klag completed a cardiac assessment form stating Plaintiff had chest tightness with minimal activity and brought on by dyspnea. Plaintiff's most recent Echo, performed on May 19, 2012, was noted to show an ejection fraction of 60%[4]. (T. 293-294) Dr. Klag's cardiac assessment did not recommend any functional restrictions. Thereafter, Plaintiff sought no further treatment for his cardiac condition, took no medications, and he continued to smoke. (T. 295) *See Kisling v. Chater*, supra.

Plaintiff saw Keith Cunningham, M.D. for a consultative examination on July 11, 2012. Plaintiff stated "I am winded with anything," and he reported difficulties walking a few hundred yards, getting dressed, bending over, and carrying or lifting anything. He estimated that at most he could walk 15 minutes before taking a break. (T. 295) Plaintiff acknowledged he was taking no respiratory medications and did not require oxygen. He related that his recent cardiac work-up showed normal testing; he had no history of coronary artery disease, congestive heart failure, arrhythmias or valvular heart disease; and, he had no documented history of sleep apnea. (T. 295) Dr. Cunningham noted that Plaintiff is independent with his activities of daily living and is able to drive. (T. 295) While Dr. Cunningham observed that Plaintiff appeared short of breath with walking to and from his exam room, he also noted upon examination Plaintiff could walk down the hall, turn

---

[4] Within normal limits as an ejection fraction of 55% or higher is considered normal. *See* http://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last accessed on October 1, 2015).

and walk back with the use of a cane; could stand on each leg independently on heels and toes; could sit to a chair and stand; had normal coordination; had normal range of motion throughout; was able to bend forward and stand up again (although reporting dizziness); and, he had normal motor and sensory testing. (T. 296) Plaintiff coughed when asked to take a deep breath, but his breath sounds were clear, and no wheeze or rhonchi were noted. (T. 296) Dr. Cunningham and his assistant attempted pulmonary function testing numerous times, during which Plaintiff coughed and gagged, and it was noted that he "will not give a consistent effort." (T. 297) Dr. Cunningham's assessment was dyspnea demonstrating poor exercise tolerance; resting tachycardia consistent with de-conditioning; sub-optimal pulmonary function testing; longstanding tobaccoism; obesity; query sleep apnea; and, umbilical hernia. (T. 297)

Dr. Cunningham opined that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk six to eight hours in an eight hour day, use of an assistive device (cane) was not medically necessary, and he could sit without limitation. (T. 298) Plaintiff had no limitations in reaching, handling, fingering or feeling, but he could only occasionally climb (ramp/stairs), stoop, kneel, crouch, and he could never climb (ladder/rope/scaffold) or crawl. (T. 299). Environmental restrictions included working around heights, extremes in temperature, and around dust/fumes or gases based on Plaintiff's obesity, shortness of breath and safety. (T. 299) The Commissioner contends the ALJ's RFC assessment of sedentary work with environmental restrictions is consistent with Dr. Cunningham's findings and opinions. (T. 27) The Court agrees. Dr. Cunningham's findings and opinions are substantial evidence in support of the ALJ's RFC finding. *See Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)

(ALJ properly relief upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The opinions of other non-examining medical consultants also support the ALJ's physical RFC determination. Upon a review of Plaintiff's medical records, M. L. Rees, M.D., a state agency medical consultant, found on August 15, 2012 that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, and push and/or pull without limitation. (T. 311) Dr. Rees opined that Plaintiff should never climb (ladder/rope/scaffold), could only occasionally climb (ramp/stairs), stoop, kneel, crouch or crawl, but could frequently engage in balancing. (T. 312) No manipulative, visual or communicative limitations were noted. (T. 313-314) Environmental limitations included avoiding concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.). (T. 314) Dr. Rees also noted that Plaintiff's "[c]ondition expected to improve with medical management of COPD and if able to abstain from alcohol and tobacco." (T. 315) Dr. Rees' findings were affirmed by Lucy Sauer, M.D. on February 3, 2013. (T. 377) Such opinion evidence further supports the ALJ's RFC determination. *See* 20 C.F.R. § 404.1527.

Plaintiff also asserts mental health symptoms support his disability claim. (Doc. 12, P. 11) Plaintiff's scant treatment records, however, evidence no mental health symptoms or treatment. Plaintiff's psychiatric exam at Phoenix Baptist Hospital on May 19, 2012 showed that he was alert and oriented x 3, he had good concentration and insight, and he made no complaints of psychiatric symptoms. (T. 277) Similarly, the emergency room record on July 23, 2012 contains no complaints of any mental health symptoms, and the review of systems documents "negative" for any psychiatric

issues. (T. 338-339) The one page record from Banner Thunderbird Medical Clinic contains no reference to any mental health issues. (T. 324) *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider).

Plaintiff relies upon the observations and opinions of Dr. Samuel Hester, a psychologist and consultative examiner, who performed a mental diagnostic evaluation on December 20, 2012. (T. 330-337) Dr. Hester reported that Plaintiff had no history of mental health treatment, and he opined that Plaintiff's mental symptoms "sound mostly situational." (T. 330-331) Plaintiff reported sadness and worry about his health decline, but Dr. Hester commented that "all seems situational." (T. 330) *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (medical record supported conclusion that claimant's depression was situational in nature). No job loss related to mental problems was noted, nor were any problems getting along with others. (T. 331) Plaintiff's mood was observed to be only slightly depressed and anxious; his affect was appropriate; his thought process was logical; his thought content was appropriate; no perceptual abnormalities were noted; and, cognitive testing was normal. (T. 332-334) Dr. Hester found Plaintiff capable of communicating and interacting in a socially adequate manner and in an intelligible and effective manner. (T. 336) He also found Plaintiff had the ability to attend and sustain concentration on basic tasks and the ability to sustain persistence in completing tasks. (T. 336) Despite these findings, Dr. Hester concluded that Plaintiff cannot cope with the mental demands of basic work tasks, nor could he complete work tasks within an acceptable time frame, due to being out of breath and focused on painful ambulation. These issues, he noted, "appear to be more physical than mental." (T. 336) This reference to primarily physical, and not mental, problems was understood by the ALJ, and the ALJ pointed out that limitations physical in nature were outside of Dr. Hester's area of expertise. (T. 30) *See Brown v.*

*Astrue*, 611 F.3d 941, 953 (8th Cir. 2010), quoting *Thomas v. Barnhart*, 130 Fed.Appx. 62, 64 (8th Cir. 2005) ("[g]reater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist."). The ALJ gave some weight to Dr. Hester's opinions, as they related to Plaintiff's mental limitations, and he found them consistent with a capacity to perform simple tasks with simple instructions.

Susan Daugherty, Ph.D., an agency medical consultant, performed a mental residual functional capacity assessment of Plaintiff on February 4, 2013. (T. 359-363) Dr. Daugherty found Plaintiff had moderate difficulties in his ability to carry out detailed instructions and to maintain concentration for extended periods; however, Plaintiff had no limitations in the area of understanding and memory, and no limitation in the ability to carry out very short and simple instructions. (T. 361) Dr. Daugherty's opinions further support the ALJ's mental RFC assessment that Plaintiff would need to work at jobs which involve only simple tasks and simple instructions. (T. 27)

A review of the record shows the ALJ took into account the reports and opinions of Plaintiff's treating physicians, the opinions of consultative physicians, the allegations and testimony of Plaintiff, a third-party function report from Plaintiff's mother, and the ALJ considered the combination of all the Plaintiff's impairments in making his RFC determination. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir.  2010). In doing so, the ALJ concluded Plaintiff retained the residual functional capacity to perform sedentary work, but with certain environmental and non-exertional limitations. As discussed above, substantial evidence supports the ALJ's RFC determination.

**2. GAF Scores**

Plaintiff also argues the ALJ erred in not giving his global assessment of functioning ("GAF") scores more evidentiary weight. Plaintiff claims his GAF score of 45 evidences serious symptoms that must be carefully considered in determining RFC. (Doc. 12, p. 11)

The GAF score is a subjective determination representing "the clinician's judgment of an individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). The failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination. *Id.*, citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Quoting from *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 511 (6th Cir. 2006), the Court in *Jones* stated, "[a]ccording to the [Diagnostic and Statistical Manual's] explanation of the [Global Assessment Functioning] scale, *a score may have little or no bearing on the subject's social and occupational functioning . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a [Global Assessment Functioning] score in the first place.*" (Emphasis added.) The Court went on to state that the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings,'" and that denials of disability benefits where applicants had GAF scores of 50 or lower have been affirmed. *Jones*, 619 F.3d at 974-75.

We recognize, as the Commissioner did (Doc. 13, p. 14), that the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM–V") was released in 2013, replacing the DSM–IV. The DSM–V has abolished the use of GAF scores to "rate an individual's level of functioning because of 'its conceptual lack of clarity' and 'questionable psychometrics in routine

practice.'" *Alcott v. Colvin*, No. 4:13–CV–01074–NKL, 2014 WL 4660364, at *6 (W.D. Mo. Sept. 17, 2014) (citing *Rayford v. Shinseki,* 2013 WL 3153981, at *1 n. 2 (Vet.App.2013) (quoting the DSM–V)). However, because the DSM–IV was in use at the time the medical assessments were conducted in this case, the GAF scores remain relevant for consideration in this appeal. *Rayford*, 2013 WL 3153981, at *1 n. 2. Even so, the Court agrees with the Commissioner that Plaintiff's reliance on only one GAF score assessed by a one-time examiner as a basis for remand is misplaced.

Examples given in the DSM-IV, p. 34, of "serious symptoms" include suicidal ideation, severe obsessive rituals, or frequent shoplifting, while examples of "serious impairment in social, occupational, or school functioning" include having no friends and an inability to keep a job. There is no evidence of any such "serious symptoms" in the present case. Plaintiff has no history of suicidal ideation, no perceptual abnormalities or severe obsessive rituals were noted, and Plaintiff has had no problems with the law. (T. 51, 333) Further, Plaintiff lives with his mother and a friend, gets out on his own, shops, spends time with others, attends church, and has no problems getting along with family, friends, neighbors and others. (T. 204-211, 235-242) The ALJ did not err by discounting the Plaintiff's GAF score in considering his functional ability. *See Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015), in which the Court upheld the ALJ's failure to give weight to the GAF score, citing 65 Fed. Reg. 50746, 50764-65 (GAF scores have no direct correlation to the severity requirements in our mental disorders listings).

### 3. Additional Pulmonary Testing Not Necessary

Plaintiff next argues the ALJ erred in his RFC assessment by not ordering additional testing to determine whether Plaintiff meets listing 3.02 for COPD, stating merely that "[t]here clearly exists the distinct possibility that this is indeed the case." (Doc. 12, p. 11) The argument lacks merit.

The ALJ has a duty to fully and fairly develop the record. *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992), quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). The ALJ, however, is not required to act as Plaintiff's counsel. *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a "reasonably complete" record); *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support his disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on him at all times to prove up his disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 416.912(a) and (c).

Considering the evidence as a whole, the Court concludes the ALJ was not required to further develop the record because it was already reasonably complete, and it contained sufficient evidence from which the ALJ could make an informed decision. There is no ambiguity in the medical evidence of record that must be resolved. The medical evidence contains all the necessary information about Plaintiff's pulmonary condition, including, the paucity of treatment for the condition, Plaintiff's non-compliance with taking medications for the condition, and his continued smoking despite physician instructions to quit. Moreover, pulmonary function testing was performed, and sub-optimal results were obtained because Plaintiff would not give a consistent effort. (T. 297) The mere possibility that additional testing might show that Plaintiff meets the 3.02A listing for COPD is insufficient to require the ALJ to order another pulmonary function test. *See* 20 C.F.R. § 416.912(e).

The evidence fully and fairly documents Plaintiff's pulmonary impairment during the relevant period, and it provides a sufficient basis for the ALJ's decision. Accordingly, the Court finds the ALJ was not obligated to order further testing to develop the record further. If Plaintiff wanted to present more specific information in addition to the medical evidence of record, he had the opportunity and should have done so. *Onstad*, 999 F.2d at 1234. Reversal for failure to fully and fairly develop the record is warranted only where such failure is unfair or prejudicial. *Haley*, 258 F.3d at 748. Plaintiff has not shown the ALJ failed to develop the record in an unfair or prejudicial manner.

### B. No Error in Step Two Analysis

The ALJ did not find Plaintiff's reported back pain was a severe impairment. (T. 25-26) Plaintiff contends this was prejudicial error under the *de minimus* standard established by the law.

(Doc. 12, p. 12) Plaintiff relies on his testimony that he suffers back pain "all the time," that he was treated for it in late 2011 when it was "unquestionably severe following his motor vehicle accident," and that back pain was noted again in May 2012. (Doc. 11, pp. 11-12) The ALJ's determination that Plaintiff's back pain is not severe is supported by substantial evidence.

An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

In describing his back pain, Plaintiff testified "[i]t's like pressure in the small of my back, and it radiates up," "[i]t just hurts." (T. 65) He stated the condition has troubled him "quite a while," "a few years," and that it has progressively gotten worse. He thinks it resulted from heavy lifting with the construction work he has done, but he acknowledged no back injury has been diagnosed by anyone other than the chiropractor. (T. 65)

The ALJ found the medical evidence showed Plaintiff's positive response to chiropractic treatment from October 7, 2011 to December 29, 2011 for moderate pain and inflammation in the neck and back following an automobile accident. (T. 25) That finding accurately assessed the medical evidence regarding Plaintiff's back pain. The chiropractic exam reports show that on October 21, 2011, "[h]e is responding to Tx [treatment] and is ready for the sub-acute stage of care" (T. 415); on November 14, 2011, he was noted to be "in the strengthening stage of care," and "is responding to care as expected" (T. 412); on December 8, 2011, he was "in the restoration at home stage of care," and was "responding to treatment as expected" (T. 409); and, he was released from care on December 29, 2011, having "80 to 90% improvement from injuries sustained in the MVC on 10/7/11" (T. 406). Upon his release from care, Plaintiff was instructed to continue home exercises as prescribed for another eight weeks, and he was told to return if problems arose. (T. 406) Plaintiff did not return for any further chiropractic care for his back pain, suggesting that his back injury had fully resolved. When Plaintiff presented to the Phoenix Baptist Hospital on May 19, 2012, he made no complaints of any musculoskeletal back pain. (T. 276-277) Moreover, Plaintiff made no complaints of back pain in his emergency room visit to Phoenix Baptist Hospital on July 23, 2012 (T. 338-339), nor at his office visit to Banner Thunderbird Medical Clinic on September 26, 2012 (T. 324). As noted by the ALJ, there is no evidence in the record of any current medical evaluation, treatment, or prescribed medications by any physician for complaints of back pain. (T. 25)

The ALJ considered the minimal and conservative treatment Plaintiff received for his complaints of back pain, and he correctly determined the medical evidence of record did not support Plaintiff's claim of disabling back pain. (T. 25) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.

2004); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); and, *see also Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). There is simply no medical evidence in the record to establish more than a minimal functional loss resulting from Plaintiff's alleged back pain.

Considering the evidence as a whole, the Court finds the ALJ's step two determination is supported by substantial evidence and should be affirmed.

### C. Sufficient Evidence Supports the ALJ's Denial of Benefits

Plaintiff's final point on appeal is a generic argument that if the ALJ's decision denying benefits was not supported by substantial evidence, then the case must be reversed or remanded. Plaintiff asserts only that "[a]ny objective consideration of the evidence in this case provides persuasive evidence detracting from the ALJ's decision."(Doc. 12, p. 13) For the reasons discussed above, the Court finds substantial evidence does support the ALJ's denial of benefits in this case.

### IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB and SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of October, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE